1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8    TINA ALEXANDERSON,                )    No. 1:14-CV-3119-LRS
                                       )
9              Plaintiff,              )    **ORDER GRANTING**
                                       )    **PLAINTIFF'S MOTION FOR**
10             vs.                     )    **JUDGMENT,** *INTER ALIA*
                                       )
11   CAROLYN W. COLVIN,                )
     Acting Commissioner of Social     )
12   Security,                         )
                                       )
13             Defendant.              )
     _____   )

14

15        **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

16   (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 19).

17

18                            **JURISDICTION**

19        Tina Alexanderson, Plaintiff, applied for Title II Disability Insurance

20   Benefits (DIB) on October 7, 2010.  The application was denied initially and on

21   reconsideration.  Plaintiff timely requested a hearing and a hearing was held on

22   September 14, 2012, before Administrative Law Judge (ALJ) Virginia M.

23   Robinson.  Plaintiff, represented by counsel, testified at the hearing, as did Trevor

24   Scott Whitmer as a vocational expert (VE).  On December 28, 2012,  the ALJ

25   issued a decision denying benefits.  The Appeals Council denied a request for

26   review and the ALJ's decision became the final decision of the Commissioner.

27   This decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 50 years old. She has a post-graduate college education and past relevant work experience as an executive director, social welfare administrator, program coordinator, and as a caseworker. Plaintiff initially alleged disability from December 31, 2006 to May 19, 2011, but now seeks a closed period of disability from May 1, 2009 to May 19, 2011.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v.*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1   *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

2        A decision supported by substantial evidence will still be set aside if the

3   proper legal standards were not applied in weighing the evidence and making the

4   decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

5   (9th Cir. 1987).

6

7                                    **ISSUES**

8        The Commissioner concedes the ALJ  erred in certain respects and contends

9   the matter should be remanded for additional proceedings.  Plaintiff contends the

10  matter should be remanded for an award of benefits.

11

12                                  **DISCUSSION**

13  **SEQUENTIAL EVALUATION PROCESS**

14       The Social Security Act defines "disability" as the "inability to engage in

15  any substantial gainful activity by reason of any medically determinable physical

16  or mental impairment which can be expected to result in death or which has lasted

17  or can be expected to last for a continuous period of not less than twelve months."

18  42 U.S.C. § 423(d)(1)(A) .  The Act also provides that a claimant shall be

19  determined to be under a disability only if her impairments are of such severity

20  that the claimant is not only unable to do her previous work but cannot,

21  considering her age, education and work experiences, engage in any other

22  substantial gainful work which exists in the national economy. *Id*.

23       The Commissioner has established a five-step sequential evaluation process

24  for determining whether a person is disabled.  20 C.F.R. § 404.1520; *Bowen v.*

25  *Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if she

26  is engaged in substantial gainful activities.  If she is, benefits are denied.  20

27  C.F.R. § 404.1520(a)(4)(i).  If she is not, the decision-maker proceeds to step two,

28  which determines whether the claimant has a medically severe impairment or

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

1  combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does

2  not have a severe impairment or combination of impairments, the disability claim

3  is denied.  If the impairment is severe, the evaluation proceeds to the third step,

4  which compares the claimant's impairment with a number of listed impairments

5  acknowledged by the Commissioner to be so severe as to preclude substantial

6  gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App.

7  1.  If the impairment meets or equals one of the listed impairments, the claimant is

8  conclusively presumed to be disabled.  If the impairment is not one conclusively

9  presumed to be disabling, the evaluation proceeds to the fourth step which

10  determines whether the impairment prevents the claimant from performing work

11  she has performed in the past.  If the claimant is able to perform her previous

12  work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot

13  perform this work, the fifth and final step in the process determines whether she is

14  able to perform other work in the national economy in view of her age, education

15  and work experience.  20 C.F.R. § 1520(a)(4)(v).

16         The initial burden of proof rests upon the claimant to establish a prima facie

17  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921

18  (9th Cir. 1971).  The initial burden is met once a claimant establishes that a

19  physical or mental impairment prevents her from engaging in her previous

20  occupation.  The burden then shifts to the Commissioner to show (1) that the

21  claimant can perform other substantial gainful activity and (2) that a "significant

22  number of jobs exist in the national economy" which claimant can perform.  *Kail*

23  *v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

24

25  **ALJ'S FINDINGS**

26         The ALJ found the following: 1) Plaintiff did not engage in substantial

27  gainful activity from December 31, 2006 to May 19, 2011; 2) Plaintiff  had

28  "severe" impairments from December 31, 2006 to May 19, 2011, which included

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

1    bipolar disorder, depressive disorder, anxiety disorder, and polysubstance abuse,

2    "in reported remission;" 3) from December 31, 2006 to May 19, 2011, Plaintiff did

3    not have an impairment or combination of impairments that met or equaled any of

4    the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 4) from December

5    31, 2006 to May 19, 2011, Plaintiff had the residual functional capacity (RFC) to

6    perform medium work defined as lifting and/or carrying 50 pounds occasionally

7    and 25 pounds frequently, and sitting, walking, and/or standing for up to six hours

8    in an eight hour work day with normal breaks.  She was, however, limited to

9    simple tasks that involved only simple, work-related decisions, and to occasional,

10   superficial interaction with the general public; 5) this RFC precluded Plaintiff

11   from performing her past relevant work; and 6) this RFC allowed Plaintiff to

12   perform other jobs existing in significant numbers in the national economy

13   including laundry worker and machine packager.  Accordingly, the ALJ concluded

14   the Plaintiff was not disabled between December 31, 2006 and May 19, 2011.

15

16   **REMAND**

17       Social Security cases are subject to the ordinary remand rule which is that

18   when "the record before the agency does not support the agency action, . . . the

19   agency has not considered all the relevant factors, or . . . the reviewing court

20   simply cannot evaluate the challenged agency action on the basis of the record

21   before it, the proper course, except in rare circumstances, is to remand to the

22   agency for additional investigation or explanation." *Treichler v. Commissioner of*

23   *Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla.*

24   *Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

25       In "rare circumstances," the court may reverse and remand for an immediate

26   award of benefits instead of for additional proceedings.  *Id*., citing 42 U.S.C.

27   §405(g).  Three elements must be satisfied in order to justify such a remand.  The

28   first element is whether the "ALJ has failed to provide legally sufficient reasons

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).   If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful.  *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).  "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Id*.  Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings."  *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).  Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits.  *Id*.  But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion."  *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

On March 20, 2011, Plaintiff underwent a consultative psychiatric examination by Joan Davis, M.D., at the expense of the Commissioner.  Dr. Davis diagnosed the Plaintiff with "[b]ipolar disorder type II by history, current depressive episode" and "[c]annabis [d]ependence in early remission."  Dr. Davis

///

///

///

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6**

1   assigned Plaintiff a GAF of 45.[1]  According to Dr. Davis:

2           Currently the claimant is experiencing vegetative symptoms
            of depression.  The likelihood of her recovery or improvement
3           in the next 12 months is guarded, though she is experiencing
            symptoms on her current medications.
4
            . . . .
5
            I believe that the claimant could manage funds.  She may have
6           difficulty performing simple and complex tasks as well as
            more detailed and complex tasks due to memory deficiency.
7           I believe the claimant could accept instructions from super-
            visors; however her ability to interact with coworkers and
8           the public might be challenging because she avoids
            situations and tries to avoid leaving her home.
9
            At this time the claimant might have difficulty
10          maintaining regular attendance in the workplace due to her
            psychiatric diagnosis.  She may experience difficulty
11          performing activities on a consistent basis without special
            or additional instructions.  It is my opinion that currently
12          she would have difficulty dealing with usual workplace
            stressors.
13
(Tr. at pp. 255-56).
14
        The ALJ rejected Dr. Davis' opinion, relying instead on a non-examining
15
opinion that Plaintiff could handle simple tasks and also because Dr. Davis'
16
opinion was purportedly inconsistent with the Plaintiff's reported functioning.
17
(ECF No. 19 at p. 15, citing Tr. at p. 27).  The Commissioner acknowledges this
18
"was an insufficient rejection of Dr. Davis' medical opinion, given there was no
19
contradictory medical evidence." (ECF No. 19 at p. 15).  It was not a "specific
20
///
21
///
22
///
23

24

25      [1]A GAF score of 41-50 means "serious" symptoms or "serious" impairment

26  in either social, occupational, or school functioning. *American Psychiatric Ass'n,*

27  *Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision

28  2000)(DSM-IV-TR).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 7**

1  and legitimate reason to reject Dr. Davis' opinion." (*Id.*).[2]

2       Because of the Commissioner's concession, Plaintiff contends Dr. Davis'

3  opinion must be credited as true and therefore, she must be awarded benefits.

4  According to Plaintiff, Dr. Davis' opinion regarding Plaintiff's functional

5  limitations were presented to the VE at the administrative hearing and he opined

6  those limitations would preclude Plaintiff from gainful employment.

7       At the hearing, Plaintiff's counsel asked the VE a hypothetical question

8  involving an individual with "significant" limitations in her abilities to perform

9  simple and complex tasks; to interact with co-workers and the public; with

10  maintaining regular attendance in the workplace; with ability to perform activities

11  on a consistent basis without special or additional instructions; and the ability to

12  deal with the usual workplace stressors. (Tr. at p. 53). The VE testified these

13  limitations would preclude "full time gainful employment." (Tr. at p. 54). It is not

14  apparent, however, that the limitations opined by Dr. Davis are as unequivocally

15  severe as those presented by counsel to the VE. According to Dr. Davis, Plaintiff

16  "may" have difficulty performing simple and complex tasks; her ability to interact

17  with coworkers and the public "might" be challenging; she "might" have difficulty

18  maintaining regular attendance; and she "may" experience difficulty performing

19  activities on a consistent basis without special or additional instructions. Asked

20  by counsel about the significance of a GAF score of 45, the VE acknowledged

21  such a person "would have significant problems in the world of work and social

22  settings," but he also qualified this by asserting that psychologists do not look at

23  the GAF score in isolation from the diagnoses. (Tr. at p. 55). In this regard, it is

24  noted that only two months after Dr. Davis' consultative examination, the Plaintiff

25

26      [2] The Commissioner also concedes that the ALJ did not specifically address

27  the opinions of ARNPs Saffran and Hicks. (ECF No. 19 at p. 14). Those opinions

28  are discussed *infra*.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

1    returned to "full time gainful employment" with the Yakama Nation.  (Tr. at p.

2    41).

3         Plaintiff was psychiatrically hospitalized twice, once on March 11, 2010,

4    and once on March 21, 2010.  On her first admission to the hospital, Howard F.

5    Harrison, M.D., assigned the Plaintiff a GAF score of "35 to 40, highest past year

6    unknown."  (Tr. at p. 247).[3]  On her second admission, Dr. Harrison assigned the

7    Plaintiff a GAF score of "25 to 30, highest past year unknown."  (Tr. at p. 230).[4]

8    On the occasion of her discharge on March 30, 2010, Dr. Harrison diagnosed the

9    Plaintiff with "[c]annabis dependence," in addition to bipolar disorder.  (Tr. at p.

10   225).  Plaintiff tested positive for cannabinoids.  (*Id*.). Dr. Harrison noted that he

11   had discussed with Plaintiff "her potential referral to Eastern State Hospital, but I

12   did not think this would be appropriate, especially if she would abstain from

13   marijuana."  (*Id*.).

14        In April 2010, the Plaintiff started seeing Amanda Ryder, M.D..  At that

15   time, she claimed she was not smoking marijuana (Tr. at p. 282), but two months

16   later in June 2010, tested positive for cannabinoids.  (Tr. at p. 279).  In September

17   2010, the Plaintiff swore to Dr. Ryder that she was no longer using any marijuana

18   _____

19        [3] A score of 31 to 40 indicates "[s]ome impairment in reality testing or

20   communication" or "major impairment in several areas, such as work or school,

21   family relations, judgment, thinking, or mood." American Psychiatric Association,

22   *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed. Text Revision

23   2000)(DSM-IV-TR at p. 34).

24        [4] A score of 21 to 30 indicates "[b]ehavior is considerably influenced by

25   delusions or hallucinations" or "serious impairment in communication or

26   judgment," or "inability to function in almost all areas."  American Psychiatric

27   Association, *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed. Text

28   Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

or alcohol.  (Tr. at p. 274).  In January 2011, Dr. Ryder noted as follows:

> [Plaintiff] has a working diagnosis of bipolar disorder.  She
> has struggled with depression for many many years.  She is
> currently seeing Sandra Saffran an ARNP at Lake Aspen.
> Sandra did some labs on her . . . in which her TSH was mildly
> elevated at 5.9 and her T3 uptake was very mildly elevated.
> I talked with Sandra about this and she seemed to say that
> clinically she sees this in patients using marijuana, however
> Tina is adamant that she's not using.  I am not aware of
> objective evidence of this relationship and I really don't
> make too much of these labs.  A f/u antithyroid antibody
> test was normal.  Sandra said that a recent drug screen Tina
> had was negative.

(Tr. at p. 261).

A chart note from Dr. Ryder, dated March 30, 2011, indicated the following
with regard to Plaintiff's "Medical History:" "Nondependent cannabis abuse,
continuous."  (Tr. at p. 257).  This was repeated in chart notes from other
providers in April 2012 (Tie Wei, M.D., and Nicola J. Bocek, M.D.) who also
noted with regard to Plaintiff's "Social History" that it included "Recreational
Drug Use: Marijuana."  (Tr. at pp. 341 and 344).

At the September 2012 administrative hearing, Plaintiff claimed the last
time she used marijuana was June 2010 (Tr. at p. 59), but the aforementioned
medical record suggests some uncertainty about this.

Advanced Registered Nurse Practitioner (ARNP) Saffran saw the Plaintiff a
number of times between July 2010 and July 2011.  On July 20, 2010 and August
2, 9 and 16, 2010, she assigned Plaintiff a GAF score of 50.  (Tr. at pp. 326-29).
On August 30 and September 9, 2010, this was increased to a 55.  (Tr. at pp. 322
and 324).[5]  On September 28, it was increased to a 58, before being decreased back

---

[5]A GAF score between 51and 60 indicates "moderate symptoms" or
"moderate" difficulty in social, occupational, or school functioning.  *American
Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed.
Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

1  to a 55 on October 28 and November 24.  (Tr. at pp. 317; 320-21). On December

2  28, it was decreased again to a 50 (Tr. at p. 314), before being increased to a 56 on

3  March 16, 2011 (Tr. at p. 306).  On July 29, 2011, after the Plaintiff had returned

4  to work, and beyond the closed period of disability claimed by her, ARNP Saffran

5  assigned the Plaintiff a GAF score of 60 (Tr. at p. 305), her highest score in almost

6  a year, but still within the 51-60 "moderate symptoms" range.

7       ARNP Theresa Hicks saw the Plaintiff for counseling beginning on April

8  26, 2010.  In a letter dated June 21, 2010, ARNP Hicks updated Dr. Ryder on

9  Plaintiff's condition.  ARNP Hicks "question[ed] the circumstances around her

10  hospitalization and [was] not absolutely certain whether stress, poor nutrition and

11  substance abuse could explain what happened or if these factors were without

12  doubt due to a diagnosis of Bipolar 1 Disorder."  (Tr. at p. 357). On April 26,

13  2010, Hicks assigned Plaintiff a current GAF score of 52 and indicated the highest

14  it had been in the past year (dating back to April 2009) was 65.[6]  Hicks' notes from

15  March 2011 forward suggest considerable improvement in Plaintiff's condition

16  (Tr. at pp. 409-11), with her note from April 26, 2011 indicating Plaintiff's mood

17  and energy was "[m]uch improved," and that Plaintiff was "[e]ngaged in volunteer

18  work [and] hopes to become employed there."  April 26, 2011 was approximately

19  one month after Plaintiff's consultative examination by Dr. Davis, and

20  approximately one month before Plaintiff resumed full-time gainful employment.

21       Based on its review of the record as a whole, this court finds that Dr. Davis'

22  March 20, 2011 opinion, even if credited as true, does not conclusively establish

24       [6]A GAF score between 61and 70 indicates "mild symptoms" or "some"

25  difficulty in social, occupational, or school functioning, "but generally functioning

26  pretty well, has some meaningful interpersonal relationships."  *American*

27  *Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed.

28  Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1   that Plaintiff was disabled for the entire claimed 24 month period of May 1, 2009

2   to May 19, 2011, or even necessarily for a continuous period of not less than 12

3   months during that 24 month period.  Relevant to this determination is how long

4   Plaintiff was engaged in substance abuse during the claimed period of disability

5   and if she is found to have been disabled during a continuous 12 month period, the

6   extent of its contribution to her disability.

7       The Contract with America Advancement Act of 1996 (CAAA) amended

8   the Social Security Act, providing that "an individual shall not be considered to be

9   disabled . . . if alcoholism or drug addiction would . . . be a contributing factor

10  material to the Commissioner's determination that the individual is disabled."  42

11  U.S.C. § 423(d)(2)(C).  Special statutes and regulations govern disability claims

12  that involve substance abuse.  The ALJ must follow a specific analysis that

13  incorporates the sequential evaluation discussed above.  20 C.F.R. §§ 404.1535(a).

14  The ALJ must first conduct the five-step inquiry without attempting to determine

15  the impact of a substance abuse disorder.  If the ALJ finds that the claimant is not

16  disabled under the five-step inquiry, the claimant is not entitled to benefits, and

17  there is no need to proceed with further analysis.  *Id*.  If the ALJ finds the claimant

18  disabled, and there is evidence of substance abuse, the ALJ should proceed under

19  the sequential evaluation and § 404.1535 to determine if the claimant would still

20  be disabled absent the substance abuse.  *Bustamante v. Massanari*, 262 F.3d 949,

21  955 (9th Cir. 2001).  If found disabled with the effects of substance abuse, the

22  claimant has the burden in steps one through four of the second sequential

23  evaluation process to prove drug or alcohol abuse is not a contributing factor

24  material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

25      In sum, under the second step of the *Treichel* analysis, outstanding issues

26  must be resolved before a determination of disability can be made.  Further

27  administrative proceedings would be useful in resolving those issues.  There is

28  uncertainty about the extent and duration of Plaintiff's functional limitations

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

during the claimed period of disability and the impact of her substance abuse during that time.  Because there are ambiguities in the record requiring resolution, a remand for an award of benefits is inappropriate.  "Administrative proceedings are generally useful . . . where there is a need to resolve conflicts and ambiguities" *Treichel*, 775 F.3d at 1101, citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9ᵗʰ Cir. 1995), and so a remand for additional administrative proceedings is warranted.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) and Defendant's Motion For Summary Judgment (ECF No. 19) are **GRANTED** to the extent that a remand is ordered for additional proceedings.  The Commissioner's decision is **REVERSED** and pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** to the Commissioner for additional proceedings consistent with this order.  An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this 13ᵗʰ of May, 2015.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 13**